## STATE OF CONNECTICUT *v.* ANDREW ROBINS
(11321)

FOTI, LAVERY and FREEDMAN, Js.

Argued February 23—decision released June 14, 1994

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Barbara Nelson,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of larceny in the first degree in violation of General Statutes §§ 53a-119[1] and 53a-122 (a) (4),[2] and making a false statement in violation of General Statutes § 53a-157 (a).[3]

---

[1] General Statutes (Rev. to 1989) § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . .

"(6) Defrauding of public community. A person is guilty of defrauding a public community who (1) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false . . . ." General Statutes (Rev. to 1989) § 53a-119 (6) (1) through (3) are now codified at § 53a-119 (6) (A) through (C).

[2] General Statutes § 53a-122 (a) provides in pertinent part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53-119 and . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

[3] General Statutes § 53a-157 (a) provides: "A person is guilty of false statement when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function."

The defendant asserts that the trial court improperly (1) denied his motion for acquittal because the state did not present sufficient evidence to sustain either of the two convictions, (2) instructed the jury on the issues of reasonable doubt and larceny, and (3) instructed the jurors that they could discuss the personalities and the charges with family and friends while the case was in progress. We agree with the third claim of the defendant and remand the matter for an evidentiary hearing.

The jury reasonably could have found the following facts. On December 5, 1989, the defendant applied for welfare assistance with the town of Fairfield, and was interviewed by caseworker Marcia Salko. In seeking a total financial disclosure, Salko asked the defendant about all of his assets such as bank accounts and property, along with any and all other pertinent information relative to his financial status for the past two years. The defendant was informed that he was required to declare all assets and to report any changes while on assistance. He was told that a failure to declare assets or to report any changes could result in penalties. The defendant furnished information, which Salko recorded on the application form, and both parties signed the form.[4] Because the defendant had indicated that he had a bank account at the Connecticut National Bank, he was required to provide verification to Salko. The defendant returned four days later, without verification, and maintained that Salko had misunderstood him previously and that the bank account had been closed sometime between three and six months earlier. Upon that representation, Salko checked off the "no" column that referred to bank accounts and wrote "Bank

---

[4] Directly above the defendant's signature, the application stated that, among other things, in signing the application, the defendant certified that all the statements made by him on the application were true and correct "under the penalty for false statement" and "subject to the penalties for larceny."

closed it 3-6 months ago." There being no further verification required at that time, the defendant was granted assistance.

On February 7, 1990, pursuant to an inquiry, the Connecticut National Bank reported that the defendant had an active account with a current balance of $702.03, and that on December 20, 1989, he had therein a balance of $3336. On February 27, 1990, at a "redetermination" meeting with Salko, the defendant indicated that the money had come from an insurance settlement on a fire in his home. He was asked to provide verification and agreed to do so. He continued to receive assistance. The defendant would not have been eligible for assistance had he disclosed the existence of the bank account balance, but might have been eligible if he had verified that the money came from an insurance settlement and had been spent to replace losses resulting from a fire. At no time did the defendant produce any adequate verification of the source of the money.[5]

Sometime thereafter, the defendant furnished Salko with copies of two money orders, one for $3000 and the other, intended to replace the first, for $2500, dated August 14, 1989, and December 28, 1989, respectively. He said the money was for the purchase of land in Jamaica.[6] The defendant also held title to two automobiles, a 1979 Honda, registered to the defendant between December 27, 1988, and December 12, 1989,

---

[5] The defendant's father did write a letter and testified at trial that the defendant had lost property in the fire, that he, the father, had given him a portion of the insurance proceeds, and that the defendant had spent the money to replace lost household items.

[6] The defendant testified that he received a check for $1500 from a friend so that the two might together purchase land in Jamaica. The defendant was to match the funds and issue a money order. Because of a correction in pricing, however, the defendant "contributed" only $1000. He testified that neither of the two money orders was ever negotiated and that he had reconsidered his participation in the project because of his health and financial difficulties. He testified that he intended to return his friend's money, but that he was unable to locate him.

and, a 1977 Datsun registered to the defendant between February 21, 1990, and December 31, 1992. He reported neither. The defendant's assistance was terminated by the town of Fairfield on April 30, 1990, when he qualified for social security and state supplemental assistance.[7]

## I

### SUFFICIENCY OF THE EVIDENCE

The defendant first claims that the evidence presented was insufficient to sustain either conviction. The defendant further claims that even if there was sufficient evidence of larceny, it was sufficient only to sustain a conviction for larceny in the second degree.

### A

The defendant posits that there was insufficient evidence of larceny because the state did not show that he received assistance to which he was not entitled. He argues that the state had the burden of proving not only that he made false statements in order to obtain assistance and that he received the assistance sought, but that he would have been ineligible for assistance had he not made the false statements. We do not agree.

"This court's role in evaluating the sufficiency of the evidence in a jury trial is well established. We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found upon the facts established and the inferences reasonably drawn therefrom, that a cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ."

---

[7] On January 31, 1989, the defendant had applied for and received assistance from the town of Trumbull. Although there was testimony that possible inaccuracies existed in the defendant's Trumbull application, complete reimbursement was made to Trumbull through Social Security and the matter was not pursued.

(Citations omitted; internal quotation marks omitted.) *State* v. *Fields,* 31 Conn. App. 312, 326–27, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d. 989 (1993), quoting *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993). While a jury may not resort to speculation and conjecture, it may draw reasonable and logical inferences. *State* v. *King,* 216 Conn. 585, 601, 583 A.2d 896 (1990).

The defendant was specifically charged with "larceny of the property of the town of Fairfield . . . [that] was obtained by defrauding the said town and the value of said property exceeds two thousand dollars" in violation of General Statutes § 53a-122 (a) (4), which defines larceny by reference to § 53a-119. General Statutes (Rev. to 1989) § 53a-119 (6) (1) (now § 53a-119 [6] [A]) defines a person who commits larceny as it applies to defrauding a public community as one who "files a claim for benefits or reimbursement from a local . . . agency which he knows is false . . . ." This section does not contain the phrase, as the defendant argues, "to which he was not entitled." Although the state must prove a wrongful taking, obtaining or withholding, we cannot conclude from this that the state must also specifically prove a lack of entitlement.

The defendant would have us impose a burden of proof on the state not required by the statute. He argues that "but for" the false statement he might have been eligible for assistance and, therefore, the state must prove beyond a reasonable doubt that he was not entitled to assistance absent the false statement. He claims that if the correct information had been provided, the state would have been able to determine the extent of his eligibility, if any. In other words, the defendant argues that the state was required to prove the dollar amount of the benefits to which he would have been entitled had he not falsified the claim.

In construing statutes, we look first to the statutory language to ascertain the intent of the legislature. *State v. Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985). We are bound by the plain and ordinary meaning of that language, unless that language is unclear or ambiguous. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980).

As applied to this case, General Statutes (Rev. to 1989) § 53a-119 (6) (1) sets forth two elements of the offense of defrauding a public community: (1) the defendant must have filed a claim for benefits from the town of Fairfield, and (2) he must have done so knowing the claim to be false. "The specificity with which the . . . elements of defrauding a public community are set forth 'connotes the legislative intent to exclude that which is not specifically stated.' *State* v. *Kish,* 186 Conn. 757, 765, 433 A.2d 1274 (1982). . . . The gravamen of the offense in such a case is the presentation of . . . a fraudulent claim. . . . If the legislature had intended that prejudice to the community was a prerequisite to conviction, it would have said so. 'It is a general rule of statutory construction that penal statutes are not to be extended by inference or implication.' 73 Am. Jur. 2d, Statutes § 297." *State* v. *Waterman,* 7 Conn. App. 326, 337–38, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986) (actual loss or prejudice to town not required to be shown under § 53a-119 [6] [3], defining larceny by agent of public community). We conclude that General Statutes § 53a-119 does not require the state to establish specifically that the defendant was not entitled to receive assistance.

Evidence was presented that the defendant had unreported income and assets in the form of a bank account at times containing significant funds, two automobiles in his name, and income from his father and a friend. From this, the jury reasonably could have

found or inferred facts establishing that the defendant had obtained welfare assistance by means of a false claim and that he knew that the claim was false, thus, proving the defendant's guilt beyond a reasonable doubt. We conclude that the evidence was sufficient to sustain the conviction of larceny.

## B

The defendant next argues that if sufficient evidence was presented to sustain a larceny conviction, it could sustain a conviction only for larceny in the second degree,[8] because the state failed to prove that the amount was over $2000 as required for larceny in the first degree.[9] The defendant argues that if Salko knew of the existence of an active bank account on February 7, 1990, any assistance from that date forward could not have been granted as a result of the defendant's false representation that he did not have an active bank account. He argues that on February 7, 1990, his "liability as to the amount fraudulently received terminated."

During the trial, a letter written by Salko to the Fairfield police department regarding this matter was admitted into evidence without objection. The last sentence of that letter stated: "During the period of assistance, December 5, 1989, through April 30, 1990, [the defendant] was given $3985 in checks and $2098.57 was paid to medical providers on his behalf."

The state's case was predicated on the defendant's false statements that he had no income or assets. When a bank account was discovered, the defendant stated, without verification, that an insurance settlement was the source of that asset. He failed to report ownership of two cars and income from an insurance payment.

---

[8] General Statutes § 53a-123 (a) (4).
[9] See General Statutes § 53a-122 (a) (4).

He did not report income from a friend that was intended to be used to buy land in Jamaica. On the basis of all of the evidence including the letter showing that the town paid over $6000, there was sufficient proof that an amount over $2000 was misappropriated by the defendant as required to establish larceny in the first degree under General Statutes § 53a-122 (a) (4).

## C

The defendant next claims that the evidence was insufficient to sustain a conviction of making a false statement because the evidence of the defendant's conduct presented by the state did not fall within the ambit of General Statutes § 53a-157. Specifically, the defendant argues that because he did not re-sign the application when he gave Salko the new information dealing with his bank account, four days after the initial interview, he did not "affirm" the misrepresentation. Therefore, he posits, he did not "make" a false written statement. We disagree.

The defendant's claim presupposes that the only basis for conviction on this count was the allegations concerning the unreported bank account and funds. As discussed previously, there were several false statements claimed. For example, the defendant's application stated that he had no income, had not transferred any assets during the last two years, and owned no motor vehicles. Evidence was presented that contradicted these statements. Neither the charging document, nor the court's instruction, indicated a limitation of proof solely to the original statement that the defendant had no bank account. We conclude that the jury, viewing the entirety of the evidence, could have found that the defendant violated the provisions of § 53a-157. Sufficient evidence was presented within the ambit of the statute to sustain the conviction.

## II

### INSTRUCTIONS AFTER TRIAL

The defendant next alleges that the trial court improperly instructed the jury on the issues of reasonable doubt and larceny.

### A

The court charged that "[a] reasonable doubt is a doubt for which a valid reason can be assigned." The defendant claims that this lessened the state's burden of proof and shifted it to the defendant. The court also instructed that a reasonable doubt is not a doubt "suggested by the ingenuity of counsel or a juror, which is not warranted by the evidence." The defendant also claims improper the court's instruction that the court looks to the jurors, acting as "sworn officers of this court to deal fairly, honestly, and justly as strong-minded men and women with the interest placed in your hands as an arm of the court to aid in upholding the law of the land, and to render a verdict of guilty if the facts and the law require such a verdict." Finally, he claims that it was improper for the court to instruct that the "law is made to protect society and innocent persons, and not [to] protect guilty ones."

These claims were not raised below; the defendant seeks review under the *Evans-Golding*[10] doctrine. Our Supreme Court has previously rejected challenges to the same or similar instructions. *State* v. *Walton,* 227 Conn. 32, 63–64, 630 A.2d 990 (1993); *State* v. *Adams,* 225 Conn. 270, 290, 623 A.2d 42 (1993); *State* v. *Stanley,* 223 Conn. 674, 695–96, 613 A.2d 788 (1992). Because the trial court's instruction did not infringe on a clear constitutional right as required for the appli-

---

[10] *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

cation of that doctrine, we will not review the defendant's claim. *State* v. *Johnson,* 29 Conn. App. 584, 590, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1994).

### B

The defendant also states that the trial court's instructions on the larceny count were "intolerably incomplete and confusing" and improperly instructed the jury by omitting an essential element of the crime.

The defendant submitted written requests to charge,[11] and noted his exception to the court's failure to instruct the jury as requested. The defendant asserts that the state was required to prove that he was not entitled to assistance in order to establish that he committed larceny. As discussed in part I A, the state is not required to prove that the defendant would not have been entitled to assistance even if he had fully disclosed his financial situation. The trial court, therefore, did not improperly refuse to instruct as requested, as it was "not an essential element of the offense charged, and thus the trial court was not obligated to charge thereon." *State* v. *Taft,* 25 Conn. App. 149, 154, 593 A.2d 973, cert. denied, 200 Conn 918, 597 A.2d 343 (1991).

### C

The defendant further claims that the trial court's instructions on larceny were not clear, accurate, complete and comprehensible. Even though this claim is unpreserved, the defendant asserts that it should be reviewed under *Evans-Golding.*

---

[11] The defendant's request to charge on larceny in the first degree stated in pertinent part: "If you find that the defendant would have been entitled to the welfare payments in question even if the monies in the bank were disclosed as required, then you must find for the defendant and return a verdict of not guilty on the charge of larceny in the first degree. *State* v. *Golding,* 14 Conn. App. 272, 281 [541 A.2d 509, rev'd on other grounds, 213 Conn. 233, 567 A.2d 823 (1989)]."

Our review of the charge in its entirety leads us to conclude that the defendant's arguments on this issue are without merit.[12] We find neither a clear violation of a fundamental constitutional right nor a deprivation of a fair trial arising out of the challenged instructions; therefore, the defendant cannot prevail on this unpreserved claim. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

## III

### INSTRUCTIONS DURING TRIAL

Finally, the defendant claims that the trial court, when releasing the jury at the end of the first day, improperly instructed the jury that "when you go home and discuss [the case] with people that are living home with you, your husbands, your children, any other relative, what you can say is, you can discuss the personalities if you wish. You can discuss what the charges are. But you cannot discuss the evidence." There was no objection to this instruction. The defendant seeks review under *State* v. *Golding,* supra, 213 Conn. 239–40, and also claims that it constitutes plain error. We agree that it rises to the level of plain error.

The state argues that the instruction was not improper since the "case" itself was not being discussed. See *State* v. *McCall,* 187 Conn. 73, 444 A.2d 896 (1982) (juror's discussion of her son's schizophrenia similar to defendant's did not amount to improper

---

[12] As part of our review of the entire instruction, we note that the trial court improperly instructed the jury that it was necessary for them to find that the defendant intended to prejudice the town when he filed the fraudulent claim. That intent is required under General Statutes (Rev. to 1989) § 53a-119 (6) (3) (now § 53a-119 [6] [c]) dealing with fraud by an officer or agent of the town. See *State* v. *Waterman,* supra, 7 Conn. App. 337. Since the improper instruction placed a higher burden on the state, the defendant benefited and may not prevail on this claim. *State* v. *Pinnock,* 220 Conn. 765, 787 n.8, 601 A.2d 521 (1992).

consideration of objective evidence extrinsic to case). The state argues that the evidence could not be discussed and, as the court later instructed, the evidence was all that the jury could consider in reaching a verdict. The state asserts that "the fact that no one heard the judge's remark as wrong at the time of trial is a strong indication that it was not understood as allowing discussion of the case." See *State* v. *Huff,* 10 Conn. App. 330, 338, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

Plain error is reserved for instances where the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Thomas,* 214 Conn. 118, 120–21, 570 A.2d 1123 (1990). Our Supreme Court has stated that a trial court's failure to follow the mandatory provisions of a statute prescribing trial procedures or to follow a procedural rule constitutes plain error. *State* v. *Johnson,* 214 Conn. 161, 171 n.10, 571 A.2d 79 (1990); *State* v. *Pina,* 185 Conn. 473, 482, 440 A.2d 962 (1981).

Practice Book § 850 provides in relevant part: "The judicial authority shall admonish the jurors not to read, listen to or view news reports of the case or to discuss with each other or with any person not a member of the jury the cause under consideration . . . ." The trial court specifically said that the jury might discuss the personalities and charges. The jury has the sole and absolute responsibility to determine the credibility of the witnesses. *State* v. *Pinnock,* 220 Conn. 765, 778–79, 601 A.2d 521 (1992). To allow a juror to "discuss" such topics is to invite the juror to be subject to an outside influence. A private talk is as likely as exposure to the news media to interfere with the exercise of deliberate and unbiased judgment of a juror. Because the jury is presumed to have followed the court's instructions; *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984); *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144

(1980); some discussion by jurors may have occurred in this case. "Discuss" is defined as "to investigate by reasoning or argument." Merriam-Webster's Collegiate Dictionary (10th Ed.). It implies talking and response. The jurors may not discuss, even among themselves, the testimony and evidence prior to commencing deliberation. *State* v. *Castonguay,* 194 Conn. 416, 431–38, 481 A.2d 56 (1984). We must conclude that to allow "discussion" of "the charges" and "the personalities" violates Practice Book § 850 and is, therefore, plain error.

Our inquiry, however, does not end there. The state has the burden of demonstrating that the improper instructions were harmless beyond a reasonable doubt. *Aillon* v. *State,* 168 Conn. 541, 548, 363 A.2d 49 (1975). There is no record on which such a determination may be made. " 'The question is whether the misconduct [if any] is of such a nature that it probably rendered the juror unfair or partial.' " *State* v. *Castonguay,* supra, 194 Conn. 437. Therefore, we must remand the case to the trial court for an evidentiary hearing on harmless error. It is the state's burden to demonstrate harmless error through an evidentiary hearing involving every juror. If the state cannot demonstrate harmlessness, a new trial is required.

The case is remanded for further proceedings consistent with this opinion. In the event that the state proves harmless error, the judgment is affirmed; in the event that the state is unable to prove harmless error, the judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.