[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR JUDGMENT (#108)
This memorandum of decision addresses the motion for judgment submitted by the plaintiff Administrator, Unemployment Compensation Act (Administrator), under date of March 22, 2000 (4 108). Therein, the plaintiff moves the court to enter judgment sustaining the plaintiff's appeal and reversing the decision rendered by the intervening defendant Employment Security Board of Review (Board) on March 18, 1998, through which unemployment benefits were awarded to the claimant and named defendant, Cynthia Sides. The Administrator claims that the Board's decision to award benefits is arbitrary, unreasonable and illegal because it is contrary to the provisions of General Statutes § 31-236 (a), as amended by P.A. 95-323, and because the agency's decision over-extends the applicability of General Statutes § 31-235 (a). Specifically, the Administrator asserts that the claimant was disqualified from receiving unemployment compensation benefits, pursuant to the application of General Statutes § 31-236 (a)(2)(B), in that she had demonstrated "wilful misconduct" through the multiple separate unreported absences that occurred within an eighteen month period, in violation of her employer's protocol. The Administrator further argues that the claimant fell outside the scope of eligibility for benefits within a fair interpretation of § 31-235 (a), notwithstanding her participation in a drug treatment program. The Board counters that the court must defer to the facts found by that agency, and dismiss the appeal, affirming the award of benefits provided below, because to do otherwise would impermissibly ignore an element of "good cause" for termination which is implicit in the text of statute at issue. The court finds this matter in favor of the plaintiff Administrator.
This matter effectively represents an appeal by the Administrator from an award of benefits to the claimant, with resulting liability assessed against the employer, which covered an eleven week period of unemployment that commenced on or about April 14, 1996. The procedural history reflects that a fact finder had made an initial determination that benefits should be awarded to Sides, in reliance upon the factual circumstances described below. The employer appealed from this decision. When an appeals referee affirmed the award of benefits to the claimant, the employer appealed to the Board. Upon review of the record and consideration of the referee's findings, the Board also disagreed with CT Page 12469 the employer, essentially concluding that at least one of the claimant's absences was directly attributable to her then-unresolved substance abuse problem, and apparently therefore determining that the amended provisions of § 31-236 (a)(2)(B) would therefore be inapposite in this matter. See Decision of the Board of Review issued March 18, 1998. Benefits again having been affirmed, this appeal by the Administrator followed.[1]
The Administrator's uncontested authority to file this appeal has been established by General Statutes § 31-248 (c), § 31-249b and § 31-249c. The Board has intervened in support of its decision, under the similarly applicable authority of § 31-249c. The Administrator and the Board represent the only parties before the court at this time, as neither the claimant nor the employer have filed appearances.
 I. FACTUAL BASIS FOR DECISION
The present parties have stipulated to the essential findings of fact which form the basis for both the Administrator's motion and the Board's objection thereto.[2] The relevant facts are as follows:
Sides had been employed as a waitress by Prime Hospitality, Corp., d/b/a The Silver City Grill, for approximately nine months, until she was discharged effective April 5, 1996. Shortly after the claimant began working at The Silver City Grill, her supervisor advised her of a longstanding company policy that required employees to call in and notify their supervisor on any occasion when they find themselves unable to report for duty as scheduled. The claimant was also cautioned that she was expected to report her absenteeism at least eight hours prior to the scheduled start of her work shift.
The claimant has been addicted to the use of alcohol and narcotic substances for the past twenty years, including the time when she was employed at The Silver City Grill. The claimant was absent from work without the afore-described notification to the employer on from October 31, 1995 through November 2, 1995. The claimant's unreported absenteeism was the direct result of her addiction to narcotics. The claimant was also absent from work, without the directed notification to the employer, on October 14, 1995 and again on January 24, 1996. The claimant's chronic addition to narcotics was not, however, a factor in these two other occasions of unreported absenteeism. The claimant did not report for work as scheduled on October 14, or on January 24, because she misread the employer's work schedule.
Thereafter, the claimant was scheduled to work at The Silver City Grill from 9:30 a.m. until 3:30 p.m. on Sunday, April 7, 1996. The claimant, CT Page 12470 however, did not report for duty nor did she contact the employer to report her absenteeism that day. The claimant had consumed a debilitating amount of a narcotic substance on, or shortly before, April 7, 1996 and, for this reason, was unable to think or act in a rational manner during the course of the day in question. The claimant's unreported absenteeism of April 7, 1996 was the direct result of her addiction to the use of narcotic substances. The claimant was discharged as a direct result of her unreported absenteeism on this date.
The claimant has not partaken of any narcotic substance since April 7, 1996. On or about April 11, 1996, some four days after her discharge from her employment at The Silver City Grill the claimant entered a program of treatment for narcotics and alcohol detoxification at the Veterans Memorial Center in Meriden, Conn. She completed this program of treatment on May 31, 1996. On or about June 1, 1996, the claimant began her practice of attending Narcotics Anonymous and Alcoholics Anonymous meetings five days a week. She continues to participate in this form of treatment for alcoholism and drug addiction.
The claimant received a release from her social worker authorizing her return to work on April 14, 1996. The claimant applied for unemployment benefits for the week ending April 20, 1996. The claimant filed for eleven weeks of benefits, from the week ending April 20, 1996 through the week ending June 23, 1996. The claimant returned to work prior to the board's rendering its decision upon her application.
These above factual findings ostensibly formed the basis for the Board "s conclusion that the claimant was both qualified and eligible for unemployment benefits, within the meaning of General Statutes § 31-236
(a), as amended, and pursuant to § 31-235 (a). Below, the Board unqualifiedly and on multiple occasions rejected the Administrator's submission that § 31-236 (a) absolutely and without question mandates disqualification in the event of three separate absences within an eighteen month period unless due notice is given. Instead, the Board construed this statutory provision, notwithstanding its amendment, as allowing the award of benefits if a claimant had good cause for failing to provide notice of the absences. Thus, under the circumstances of this case, the Board found that the applicable version of § 31-236 (a) would not disqualify a claimant, but would allow her to qualify for benefits, if measurable evidence of good cause, such as incapacity due to ingestion of narcotics by a substance-addicted person, established a basis for not having provided notice of the absences at issue. The Board further found that the claimant was able and available for work, as contemplated by § 31-235 (a), given her noted enrollment in a program for treatment of her substance abuse.
CT Page 12471 II. APPLICATION OF THE LEGISLATION TO THE FACTS OF THIS CASE
The parties to this appeal raise no contest over the facts, or over the reasonableness of the protocol established by The Silver City Grill for employees to follow when providing notice of their absence from work. The Administrator claims instead that the Board incorrectly applied the law to the facts as found in this matter, and that the agency thereby reached an unreasonable result. While not permitting the court to substitute its own factual conclusions for those of the administrative board, such a claim places upon the court "the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Citations omitted.) United Parcel Service v.Administrator, Unemployment Compensation, 209 Conn. 381, 385-86,551 A.2d 724 (1988); see also Beizer v. Dept. of Labor, 56 Conn. App. 347,360, 742 A.2d 821 (2000).
In determining whether the Board correctly applied the statutes at issue, the court has applied the relevant principles of legislative construction. "In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted; citation omitted.) Eskin v. Castiglia, 253 Conn. 516,523, ___A.2d ___ (2000). However, it is axiomatic and fundamental that "`[i]f the language of a statute is plain and unambiguous, courts need look no further than the words used because courts assume that the language expresses legislative intent. Office of Consumer Counsel v.Dept. of Public Utility Control, 234 Conn. 624, 646, 662 A.2d 1251
(1995).' Candlewood Landing Condominium Assn., Inc. v. New Milford,44 Conn. App. 107, 110, 686 A.2d 1007 (1997); see also 1 B. Holden J. Daly, Connecticut Evidence (2d Ed. 1998) § 50, p. 227." Funaro v.Baisley, 57 Conn. App. 636 638 ___ A.2d ___ (2000).
 A. CONSTRUCTION AND APPLICATION OF § 31-236 (a)(2)(B)
In support of his appeal, the Administrator claims that applicable principles of statutory construction support the conclusion that any three separate incidents of absence from work, without due notice, and which occur within an eighteen month period, constitute "wilful misconduct" pursuant to the applicable version of § 31-236 (a)(2)(B).[3] The Administrator argues that the plain language and structure of this statute clearly establish that while an employee may receive two opportunities for being absent without due notice within an eighteen month period, a third absence during that time will disqualify the worker from receiving unemployment benefits. The Administrator further maintains that CT Page 12472 this interpretation is supported by the legislative history which preceded the amendments to § 31-236 (a) which were provided through P.A. 95-323,[4] wherein the act's sponsors specifically commented that the revision would increase the opportunity to remain qualified for benefits from one absence without notice occurring within twelve months, to two absences without notice occurring within eighteen months. Under such an interpretation, the Board "s application of that statute to the facts of this case would, indeed, have achieved an unlawful result.
The record establishes that the claimant was discharged from her employment due to her failure to provide the employer due notice of her absences from work on October 14 and October 31 through November 2 of 1995, and also on January 24 and May 6 of 1996. The Board protests that the absences on October 31 through November 2 of 1995 and May 6 of 1996 were due to the claimant's addiction to narcotics, and that she cannot be held accountable for her failure to attend work on those days, nor for her failure to follow the absence notification protocol in effect at The Silver City Grill. Even the Board must acknowledge, however, that whatever the cause for the absence, these events represent more than three incidents of unapproved absences from work, all occurring within an eighteen month period, as contemplated by § 31-236 (a)(2)(B), as amended through P.A. 95-323.
Such incidents of absenteeism could also have constituted grounds for absolute disqualification from receipt of unemployment compensation benefits, prior to the passage of P.A. 95-323. Prior to the 1995 amendments, however, the disqualification statute contained a specific reference to "repeated" wilful misconduct but contained no specific definition of "wilful misconduct" as it would apply to claims arising from discharge due to absence from work. Under the previous application of the test, only "repeated" wilful misconduct, construed as an absence without leave, would disqualify a discharged employee from receiving unemployment compensation benefits.
The new test, provided through P.A. 95-323, is precise and applicable to the facts presented by the case at bar. As Judge McWeeney has noted, "Section 31-236 of the General Statutes, entitled "Disqualifications' sets forth in great detail disqualifying circumstances for unemployment compensation." Administrator, Unemployment Compensation Act v. Bliven,
Superior Court, judicial district of Hartford at Hartford, Docket No. CV97-0574866 (April 19, 1999, McWeeney, J.) (considering the implications of this amended legislation for employees who commit petty larceny). Those disqualifications include express language related to individuals who are absent from employment without providing due notice to the employer. The legislation itself, as amended, thus provides a clear and explicit definition of the circumstances which will disqualify an CT Page 12473 employee from receiving unemployment compensation: "An individual shall be ineligible for benefits . . . (2) . . . (B) if, in the opinion of the administrator, he has been discharged or suspended for . . . wilful misconduct in the course of his employment. . . . For purposes of subparagraph (B) of subdivision (2) of this subsection . . ., in the case of absence from work, "wilful misconduct' means an employee must be absent without notice for three separate instances within an eighteen-month period."
The position of the Board is that a proper application of § 31-236
(a)(2)(B) requires that a condition precedent of "good cause" be found in the facts surrounding termination. The operative provision of the statute in this case, however, contains no reference to the notion of "good cause" either in its text, or in its intention. The Board would have the court impute such a requirement of "good cause" from the legislation's use of the terms "provided further" to introduce the clause "in the case of absence from work" when defining the context of "wilful misconduct" in circumstances such as that affecting the claimant and The Silver City Grill. Memorandum of the Board of Review, p. 6, 8 (February 18, 2000).
The Board further argues that the claimant's absences cannot constitute disqualification because the language of § 31-236 (a), even as amended, requires construction in the light of that agency's previous determinations that persons who are substance addicted should be excused from the harsh application of the automatic termination provisions. The Board seeks in this review deference both to its statutory construction, and to its application of the law to factual circumstances presented prior to the specific amendments regarding absences, set forth through P.A. 95-323. Such deference is unwarranted, due both to the plain language of the definition of "wilful misconduct" as it relates to absences from work, established through the amended statute, and to the court's role with regard to the explication of the legislation at issue. "The interpretation and construction of a statute is uniquely the function of courts not administrative agencies. Bezzini v. Department ofSocial Services, 49 Conn. App. 432, 436 ["715 A.2d 791] (1998);Connecticut Light Power Co. v. DPUC, 219 Conn. 51, 57-58, [591 A.2d 1231] (1991); Assn. of Not-for-Profit Providers for the Agingv. Dept. of Social Services, [244 Conn. 378, 389, 709 A.2d 1116 (1998)]."Administrator, Unemployment Compensation Act v. Bliven, supra.
The Board's strained construction of the amended version of § 31-236
(a)(2) improperly avoids the legislature's obvious creation of a precise measure by which absences from work, without notification to the employer, can serve as a valid basis for discharge of an employee, without having the employer incur the burden, or the employee receiving CT Page 12474 the benefit, of unemployment compensation. It is not necessary, under the specific language of this legislation, for an employee to wilfully disregard the employer's interest, nor must the employee knowingly violate a reasonable and uniformly enforced rule of employment, in order to achieve disqualification from benefits. The plain language of §31-236 (a)(2)(B) establishes that absences from employment, without provision of notice to the employer, which occur three times in an eighteen month period, will, without more, disqualify the employee from the benefits at issue.[5] Here, where "the language of the statute is clear, it is assumed that the intention is expressed by the words themselves and therefore there is no need to construe the statute; . . . for where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended but what intention it expressed by the words that it used." Robinson v. Unemployment Security Board of Review,181 Conn. 1, 6, 434 A.2d 293 (1980).
The court is thus bound by the plain and ordinary meaning of statutory language, unless that language is unclear or ambiguous. State v. Robins,34 Conn. App. 694, 700, 643 A.2d 881 (1994), citing Robinson v.Unemployment Security Board of Review, supra, 181 Conn. 6. Here, the Board has attempted to inject social policy and public benefit analysis into the text of clearly drawn legislation which, by its proper application, may seem to require a firm-handed result where employees suffering from conditions such as alcoholism or substance abuse, diminishing their ability to communicate effectively with an employer before an absence from work occurs, thereby inadvertently calling the disqualification provisions of § 31-236 (a)(2) into play. However honorable those intentions, this court must reject such construction of General Statutes § 31-236 (a) as here is suggested by the Board, finding there to be no lack of clarity or ambiguity in the text of the legislation, and finding the proposed interpretation to be inconsistent with the clear language and structure of the statute, as amended through P.A. 95-323.
Even an examination of "what the legislature actually intended" through the revision to this statute, however, vitiates the Board's argument in support of its rulings below. The manifest "intent of Public Act 95-323 was to broaden the scope of disqualification [for unemployment compensation benefits], especially with respect to the nature of the termination." Administrator, Unemployment Compensation Act v. Bliven,
supra.[6] The revised statute contains an unequivocal definition of the term "wilful misconduct" as it is to be applied in cases where an employee fails to provide due notice of an absence from work. This definition provides a "bright line" test for both employers who seek to terminate for absence-related "wilful misconduct" and workers who seek CT Page 12475 either to retain their employment, or to make themselves eligible to receive unemployment compensation benefits after termination. "In the court's view, Public Act 95-323 is a continuation of a legislative intent to further restrict unemployment compensation for cause related terminations." Administrator, Unemployment Compensation Act v. Bliven,
supra. No special statutory analysis of legislative intent or historical parsing of phrases is necessary, however, to a full and fair understanding of the absence provisions of § 31-236(a)(2)(B). The test is clearly set forth in the statute; the claimant failed to pass the test; and the Board inadvertently enhanced the claimant's failure by overextending the statute, and offering her unemployment compensation benefits to which she was never entitled, by operation of law.
The Board earnestly urges this court to recognizes that its interpretation of the absence from work disqualification clause, now expressed in § 31-236 (a)(2), is both logical and rational, in that it requires only a showing of good cause either for the employee's absence or the employee's failure to provide due notice of the absence. The Board implores the court to rely upon a number of trial court decisions ostensibly establishing the Administrator's willingness to forgo disqualification from benefits, where the employee had demonstrated good cause by way of illness or accident. Memorandum of the Board of Review, pp. 13-14. The reasoning of these cases, however cogent, cannot overcome the clear and explicit test for absences set forth in the amended version of § 31-236 (a)(2) which affects the parties to this matter. No amount of searching, or creative research, or wishful analysis will cause the desired element of "good cause" to appear in the midst of the amended statute, absent additional revision by the legislature or scrutiny by an appellate tribunal.
In Part III of its Memorandum opposing the Administrator's appeal, the Board tacitly acknowledges the reasonableness of a reading of § 31-236
(a)(2) which excludes reference to the "good cause" requirement it proposes. Instead, the Board valiantly suggests that it is within that agency's province to "interpret the statutory language "absent without notice' to include proper notice and justification for failing to give proper notice." Memorandum of the Boards pp. 18-20. Such an interpretation would enable the Board to bypass the legislation, allowing for circumstances such as a claimant's illness or addition which may be found to mitigate or excuse the claimant's conduct. Id., p. 19. Such factors are absolutely absent from the statute at issue, except insofar as they have been incorporated into the provision of two, not merely one, opportunities for an employee to fail to notify the employer of an absence situation, without fear that termination would disqualify that worker from receipt of unemployment compensation benefits in the event of an absence-related termination. CT Page 12476
In the Board's surreply brief, the intervening defendant presents another emphatic argument claiming that the Administrator's proposed construction of the disqualification statute is "irrational". Defendant Board of Review's Surreply Brief, p. 5 (April 6, 2000). The Board takes issue, again, with the Administrator's contention that any three absences without notice would trigger the disqualification provisions of §31-236 (a)(2), "even if the reasons for the absence and the failure to give notice were compelling or for good cause." Defendant Board of Review's Surreply Brief, p. 5. The court is bound, however, not by the expectations of the Board, nor by the practice of the Administrator in other cases, where "good cause" may have been accepted as a reason for failure to provide notice. The court is bound, as previously stated, by the clear and explicit language of the amended statute, and by the express definition of "wilful misconduct" as it applies to cases involving employees who are absent from work, without notice. Such definition applies to the case at bar, and binds the parties to the express test for disqualification in absence situations as provided through P.A. 95-235.
The Board's over-reaching application of § 31-236 (a)(2) to the facts of this case, and its award of benefits to the claimant, constitutes a result which is unreasonable and outside the scope of its discretion. See United Parcel Service v. Administrator, UnemploymentCompensation, supra, 209 Conn. 385-86. Accordingly, the court finds this issue in favor of the plaintiff Administrator.
 B. CONSTRUCTION AND APPLICATION OF § 31-235 (a)
The Administrator also argues that the Board inappropriately determined that the claimant was eligible for benefits under the circumstances of this case, and that the agency failed to follow the edicts of § 31-235
(a). Because the Board concluded, in its clarified finding of facts, that the claimant entered treatment on April 12, 1994, and that she was eligible to receive benefits as of April 14, 1996, the date of her approval for return to work, the Board's conclusion was premature and ill-founded.
The clear language of § 31-235 (a) establishes that "[a]n unemployed individual shall be eligible to receive benefits for any given week only . . ., if [she] is physically and mentally able to work and is available for work." The Board determined that the claimant was eligible for work notwithstanding the fact that she had entered a program for detoxification related to her narcotics use on April 11, 1996, only four days after her discharge from work at The Silver City Grill. This treatment program was not completed until May 31, 1996, approximately CT Page 12477 seven weeks later. It is incongruous to consider on the one hand that the claimant was in need of such treatment as that which required both detoxification and therapy, and on the other hand to find her, at the same time, "physically and mentally able to work and . . . available for work." § 31-235 (a). A conclusion that the claimant was, in fact, eligible for work prior to the completion of her detoxification and substance abuse treatment inconsistent with the Board's own acknowledgement that it operates under the rubric that "a claimant's addiction to alcohol or other drugs is a disease." Decision on Administrator's Motion to Reopen, p. 5 (October 9, 1998). If, in fact, the addiction caused the claimant to fail to notify her employer of that she would not be attending work on April 7, 1996, until the treatment for this addiction was completed, it would be illogical and unreasonable to find this same claimant able and available for work.
The Board would have § 31-235 (a) expanded in spirit and text, to encompass situations where a individual who is undergoing active treatment for substance abuse is concurrently "physically and mentally able to work and . . ., available for work." Absent evidence to the contrary, the court declines to adopt this application of that provision, under the circumstances of this case.
 III. CONCLUSION
In a salutary effort to ensure that the claimant is provided with compensation benefits, which would surely have enhanced her well being during a time of unemployment and commencement of a substance abuse recovery program, the Board of Review has exceeded the reasonable bounds of interpreting and applying both § 31-236 (a)(2)(B) and § 31-235
(a). The stipulated facts establish that the claimant was discharged for wilful misconduct in the course of her employment, in the sense of being "absent without notice for three separate instances within an eighteen-month period" as specifically defined in § 31-236 (a)(2) (B)' as amended. Such absences are clearly sufficient to disqualify the claimant from receipt of unemployment benefits in this case. In addition, the Board of Review inappropriately expanded the reasonable application of § 31-235 (a), finding that the claimant was eligible for work when she was receiving treatment for a long-standing substance abuse problem. While substance abuse treatment may well have been appropriate for Cynthia Sides in April and May of 1996, it is unreasonable, based on the limited record presented and under the circumstances of this case, to find that she was also then "physically and mentally able to work and . . . available for work" as well. Id.
Based on the foregoing findings and principles of law, the court finds the issues raised in the Administrator's Motion for Judgment (# 108) for CT Page 12478 the plaintiff The appeal is sustained and the matter is remanded to the Board of Review so that its decision may be vacated accordingly.
BY THE COURT,
N. Rubinow, J.