07-1114-ag
Mendez v. Mukasey

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

Argued: September 3, 2008                    Decided: November 6, 2008

Docket No. 07-1114-ag
_____

TAMARA MENDEZ,

*Petitioner,*

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,[*]

*Defendant-Appellant*.

_____

Before:

SACK and KATZMANN,
*Circuit Judges*,
and RAKOFF,
*District Judge*.[**]

Petition for review of a February 21, 2007 order of the Board of Immigration Appeals dismissing appeal from the immigration judge's decision ordering petitioner's removal.  We hold that first degree larceny in the form of "defrauding a public community" in violation of Connecticut General Statutes §§ 53a-122(a)(4) and 53a-119(6) is a crime involving moral turpitude for the purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I).  Accordingly, the petition for review is denied.

_____

[*]Michael B. Mukasey is automatically substituted as the respondent in this case pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[**] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

JUSTIN CONLON, Law Offices of Michael Boyle, North Haven, Connecticut, *for Petitioner*,

ALEX GORING (Jeffrey S. Bucholtz, Michelle Gorden Latour, Joseph A. O'Connell, *of counsel*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent*.

───────────────────────

KATZMANN, *Circuit Judge*:

On review of an order of the Board of Immigration Appeals (BIA) dismissing petitioner's appeal, we are called on to determine whether first degree larceny in the form of "defrauding a public community," in violation of Connecticut General Statutes §§ 53a-122(a)(4) and 53a-119(6), is a crime involving moral turpitude for the purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I). We hold that it is and deny the petition for review.

## BACKGROUND

The petitioner, Tamara Mendez, a native and citizen of the Dominican Republic, became a lawful permanent resident of the United States in 1990. On February 17, 2000, Mendez was convicted after pleading guilty to larceny in the first degree in violation of Connecticut General Statutes § 53a-122. She received a five-year suspended sentence and five years of probation and she was ordered to pay $7000 in restitution. Her plea colloquy reflects that she pled guilty to the subsection of Connecticut's larceny statute that prohibits "defrauding a public community." *See* Conn. Gen. Stat. §§ 53a-122(a)(4), 53a-119(6).

Mendez was placed in removal proceedings in February 2005 after reentering the country from a trip abroad. The notice to appear alleged that she was inadmissible under 8 U.S.C.

-2-

§ 1182(a)(2)(A)(i)(I) as an alien convicted of a "crime involving moral turpitude." Mendez moved to terminate the removal proceedings, arguing that defrauding a public community was not a crime involving moral turpitude because it did not require proof of intent to obtain government benefits to which she was not entitled. The immigration judge, however, denied the motion and ordered her removed.

Mendez appealed to the BIA. The BIA dismissed her appeal, finding that Connecticut's first degree larceny statute does, indeed, require proof of "intent to deprive another of property" and therefore is a crime involving moral turpitude. *In re Mendez*, No. A29-039-030 (B.I.A. Feb 21, 2007). This petition followed.

## DISCUSSION

Simply put, our task is to address Mendez' argument that first degree larceny in Connecticut, in the form of "defrauding a public community," is not a crime involving moral turpitude because (1) it does not require proof of materiality, and (2) it does not require proof of intent.

### A. Standard of Review

Where, as here, "the BIA issues an opinion, the opinion becomes the basis for judicial review of the decision of which the alien is complaining." *Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005) (internal quotation marks omitted). We afford *Chevron* deference to the BIA's interpretation of the undefined statutory term "moral turpitude," but we owe no deference to the BIA's construction of state criminal statutes. *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005). Accordingly, we review *de novo* the BIA's determination that a particular state crime falls within the definition of moral turpitude. *Id.*

## B. Definition of a Crime Involving Moral Turpitude

The BIA has defined moral turpitude generally to encompass "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); *see In re Fualaau*, 21 I. & N. Dec. 475, 477 (B.I.A. 1996). Whether a crime is one involving moral turpitude depends on "the offender's evil intent or corruption of the mind." *In re Serna*, 20 I. & N. Dec. 579, 581 (B.I.A. 1992).

"[C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude." *Jordan v. De George*, 341 U.S. 223, 232, 71 S.Ct. 703, 95 L.Ed. 886 (1951); *see also Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002) ("In the wake of *Jordan*, the courts of appeals have interpreted 'moral turpitude' as including a wide variety of crimes that involve some fraud or deceit."); *United States ex rel. Berlandi v. Reimer*, 113 F.2d 429, 431 (2d Cir. 1940) ("An intent to steal or defraud . . . has repeatedly been held to render an offense one which involves moral turpitude."). And generally, where intent is not an element of a crime, that crime is not one involving moral turpitude. *See, e.g.*, *In re Serna*, 20 I. & N. Dec. at 586 (possession of forged immigration documents is not a crime involving moral turpitude because the statute requires only knowledge that they were forged, not any intent to use them unlawfully); *In re Balao*, 20 I. & N. Dec. 440, 443-44 (B.I.A. 1992) (knowingly passing bad checks is not a crime involving moral turpitude where there is no need to prove an intent to defraud); *In re Di Filippo*, 10 I. & N. Dec. 76, 77-78 (B.I.A. 1962) (making false statements to an unemployment agency is not a crime involving moral turpitude where there is no need to prove an intent to mislead).

An offense may involve moral turpitude even if it does not contain every element of common law fraud. *See, e.g.*, *Rodriguez*, 451 F.3d at 64 (noting that materiality may not be an element of a violation of 8 U.S.C. § 1542 and concluding that "[a]lthough section 1542 may not contain every element of common law fraud, it certainly involves deceit and an intent to impair the efficiency and lawful functioning of the government. This alone is sufficient to categorize a crime as a [crime involving moral turpitude]."); *In re Jurado-Delgado*, 24 I. & N. Dec. 29, 34-35 (B.I.A. 2006) (concluding that the offense of making unsworn falsifications to authorities is a crime involving moral turpitude even though the offense did not require falsification be material). Nonetheless, Mendez argues that an offense involving false statements to the government "is not a crime involving moral turpitude if the underlying statute does not require . . . the false information [to] be material to the applicant's eligibility for the benefits sought." This argument is premised on a misreading of the BIA's decision in *Matter of Di Filippo* and is unpersuasive. In *Di Filippo*, the BIA summarized the special inquiry officer's conclusion "that moral turpitude was not involved because the section [at issue] does not require a false statement to be material," but it did not adopt this rationale. *See* 10 I. & N. Dec. at 77. Instead, the BIA concluded that the offense at issue did not involve moral turpitude because the statute did not require "proof that the false statement was made for the purpose of obtaining benefits." *Id.* at 78. The statute in *Di Filippo* did not constitute a crime involving moral turpitude because it lacked an intent element, not because it lacked a materiality element.

In determining whether a crime is a crime involving moral turpitude, we apply either a "categorical" or a "modified categorical" approach. Under the categorical approach, we look only to the minimum criminal conduct necessary to satisfy the essential elements of the crime,

not the particular circumstances of the defendant's conduct. *See Gill*, 420 F.3d at 89-90. "When the criminal statute at issue encompasses some classes of criminal acts that fall within the federal definition of aggravated felony and some classes that do not fall within the definition, the statute is considered 'divisible.'" *Abimbola v. Ashcroft*, 378 F.3d 173, 177 (2d Cir. 2004) (citing *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001)). If a statute is divisible a court, proceeding under the modified categorical approach, may refer to the "record of conviction" to determine "whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses. The record of conviction includes, *inter alia*, the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript." *Wala v. Mukasey*, 511 F.3d 102, 107-08 (2d Cir. 2007) (citation and internal quotation marks omitted).

In this case, Mendez's record of conviction makes clear that she was convicted of first degree larceny by "defrauding a public community." Mendez concedes this fact. Thus, we may assume for purposes of this case that the statute is divisible and proceed to evaluate whether Mendez's record of conviction, by evidencing a conviction for larceny by defrauding a public community, necessarily admits facts establishing the elements of a crime involving moral turpitude.

### B. Relevant Connecticut Statutes

Mendez argues that first degree larceny in Connecticut, in the form of "defrauding a public community," is not a crime involving moral turpitude because the state need not prove an intent to defraud in order to obtain a conviction under that particular subsection of the larceny statute. We find this argument unpersuasive.

Connecticut General Statutes § 53a-122(a) provides in relevant part: "A person is guilty

of larceny in the first degree when he commits larceny, as defined in section 53a-119, and: . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars." Pursuant to § 53a-119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." The statute then provides a non-exhaustive list of examples of larceny, including the subsection at issue here:

> (6) Defrauding of public community. A person is guilty of defrauding a public community who (A) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false; or (B) knowingly accepts the benefits from a claim he knows is false; or (C) as an officer or agent of any public community, with intent to prejudice it, appropriates its property to the use of any person or draws any order upon its treasury or presents or aids in procuring to be allowed any fraudulent claim against such community. For purposes of this subdivision such order or claim shall be deemed to be property.

Conn. Gen. Stat. § 53a-119(6).

Despite the clear prefatory language in § 53a-119 defining larceny as "*wrongfully* tak[ing]" property from another "with *intent to deprive*" that person of the property, Mendez contends that a person can be convicted of defrauding a public community in violation of subsection six "without either an intent to defraud or prejudice the government." She argues that the prefatory language is just that--prefatory--and thus a "larceny can be committed by an act meeting the elements listed in an individual subsection even when the act does not meet the elements listed in the prefatory language."

We had occasion to consider Connecticut's larceny statute in *Abimbola*. In *Abimbola*, we held that third degree larceny, in violation of § 53a-124, is an "aggravated felony" because it is a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G). 378 F.3d at 179. Whether

third degree larceny was a "theft offense" turned on whether the statute contained an "intent to deprive" element. Like § 53a-122 concerning first degree larceny, § 53a-124 incorporates § 53a-119's definition of "larceny." We concluded that the "intent to deprive" element contained in the prefatory language of § 53a-119 is mandatory throughout its subsections,[1] rejecting Abimbola's argument to the contrary. 378 F.3d at 180. And we noted that the Connecticut Supreme Court has held that "'a specific intent to deprive' is an 'essential element of larceny,' which 'must be proved beyond a reasonable doubt.'" *Id.* at 179 (quoting *State v. Calonico*, 256 Conn. 135, 770 A.2d 454, 470 (2001)). Mendez here presses the very argument we rejected in *Abimbola*.

Although we agree with Mendez that our holding in *Abimbola* does not control this case because third degree larceny is not a lesser included offense of first or second degree larceny,[2] we do find our prior decision instructive. Indeed, in *Abimbola* we recognized in dicta that § 53a-119's intent to deprive requirement applies in the same manner to first and second degree larceny as it does to third degree larceny. 378 F.3d at 179 ("Accepting Abimbola's position [that third degree larceny does not require proof of intent] would require a conclusion that intent to deprive is not a requirement of first- and second-degree larceny in Connecticut.").

Nevertheless, Mendez argues that defrauding a public community "does not require any

---

[1]We did note one exception, not relevant to this case, for subsection eight's prohibition against knowingly receiving stolen property, which the Connecticut Supreme Court has held does not require proof of "specific intent," but rather only of "guilty knowledge or criminal intent." *Abimbola*, 378 F.3d at 179-80 (citing *State v. Gabriel*, 192 Conn. 405, 414, 473 A.2d 300, 305-06 (1984)).

[2]Defrauding a public community can be a form of first or second degree larceny, but it cannot be a form of third degree larceny. *See State v. Kitt*, 8 Conn. App. 478, 513 A.2d 731, 736 (Conn. App. Ct. 1986).

intent on behalf of the defendant other than knowledge that information in an application for public benefits is false." To support this countertextual argument, Mendez relies on a footnote in the Connecticut Appellate Court's decision in *State v. Robins*, 34 Conn. App. 694, 643 A.2d 881, 887 n.12 (Conn. App. Ct. 1994), *aff'd*, 233 Conn. 527, 660 A.2d 738 (1995), which upheld a conviction for defrauding a public community. In the footnote, the appellate court noted "that the trial court improperly instructed the jury that it was necessary for them to find that the defendant intended to prejudice the town when he filed the fraudulent claim." *Id.* The argument that this footnote somehow vitiates the statutory requirement of intent is belied by the first footnote in that decision, which includes "intent to deprive another of property" by wrongful taking in the list of essential elements of first degree larceny. *Id.* at 882 n.1. (That footnote was repeated almost verbatim in the Connecticut Supreme Court's opinion affirming the appellate court's decision. *See* 660 A.2d at 738 n.1.)

*Robins* in fact stands for a much narrower proposition. The defendant in *Robins* included false information about his assets in an application for welfare assistance and was convicted of defrauding a public community, even though he may have been eligible for benefits had he truthfully disclosed the full extent of those assets. 643 A.2d at 883. In affirming his conviction, the Connecticut courts rejected the argument that the state had to prove that the defendant would have been ineligible for assistance absent the false statements and held that actual loss or prejudice to the government was not an element of § 53a-119(6)(A). *Robins*, 643 A.2d at 884; *see also Robins*, 660 A.2d at 739. We see nothing in *Robins* to indicate that the Connecticut courts have rejected the plain meaning of the larceny statute. Nor did the court in *Robins* hold that fraudulent intent is not an essential element of defrauding a public community. *Robins*

-9-

merely made clear that the state need not prove that a person making a fraudulent claim otherwise would not be entitled to the benefits in order to establish first degree larceny.

Furthermore, while an offense under the Connecticut larceny statute does not necessarily constitute a crime involving moral turpitude, *see, e.g.*, *Wala*, 511 F.3d at 110, defrauding a public community does. In *Wala*, we considered whether larceny, as defined by § 53a-119, is a crime involving moral turpitude[3] in light of the BIA's view that "'[o]rdinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended.'"[4] *Wala*, 511 F.3d at 106 (quoting *Matter of Grazley*, 14 I. & N. Dec. 330, 333 (B.I.A. 1973)). We concluded that the "larceny statute . . . does not distinguish between permanent and temporary takings," *Wala*, 511 F.3d at 107 (citing *State v. Wieler*, 233 Conn. 552, 660 A.2d 740, 741-42 (1995)), and that larceny, therefore, does not necessarily constitute a crime involving moral turpitude. But although the BIA at times has suggested that a *theft* is a crime of moral turpitude only if a permanent taking was intended, *see Wala*, 511 F.3d at 106, it has not applied this distinction to offenses involving an intent to defraud. *See Matter of P-*, 3 I. & N. Dec. 56, 65 (B.I.A. 1948) (rejecting suggestion that a fraud involves moral turpitude only if the taking is permanent); *see also Grazley*, 14 I. & N. Dec. at 332 (concluding that offenses constitute crimes involving moral

---

[3]The ultimate question was whether Wala's conviction for burglary in the third degree, in violation of § 53a-103, was a crime involving moral turpitude. But this question turned on whether the crime he intended to commit upon entry into the victim's house--larceny--was itself a crime involving moral turpitude. *Wala*, 511 F.3d at 106.

[4]We applied this interpretation because the BIA order "expressly referenced Wala's alleged permanent taking, making it clear that the BIA treated the inquiry as determinative of whether Wala committed a removable offense." *Wala*, 511 F.3d at 106. But we noted specifically that it is unclear whether the BIA continues to draw a distinction between a permanent and a temporary taking. *Id.*

-10-

turpitude because offenses included an element of fraud); *Matter of T-*, 2 I. & N. Dec. 22, 42 (A.G. 1944) (distinguishing theft involving a temporary taking from theft involving a permanent taking after rejecting the BIA's conclusion that the statute defines theft to require fraud). The distinction between permanent and temporary takings is not relevant here because this case involves defrauding a public community.

In the context of defrauding a public community, *Abimbola*'s conclusion that the prefatory language of § 53a-119 requires an "intent to deprive" is persuasive and is consistent with *Wala*. In *Wala,* we also read the larceny statute as requiring an "intent to deprive" but concluded that it did not require an intent to deprive permanently. In *Abimbola*, we were not called upon to decide whether the "intent to deprive" language required an intent to deprive permanently[5] because "[t]he BIA interprets 'theft offense' to include the taking of property 'whenever there is a criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent.'"[6] *Abimbola*, 378 F.3d at 176 (quoting *In re V-Z-S-*, 22 I. & N. Dec. 1338, 1346 (B.I.A. 2000)).

---

[5]Thus, our observation in *Abimbola* that "'Connecticut's larceny provisions, . . . require proof of the existence of a felonious *intent to deprive* the owner of the property *permanently*,'" 378 F.3d at 179 (quoting *Calonico*, 770 A.2d at 469 (second emphasis added)), was not necessary to resolve the appeal. In consequence, to the extent *Wala* construed Connecticut law differently, *see Wala*, 511 F.3d at 107 (citing *Wieler*, 660 A.2d at 741-42), we need not resolve the conflict in this case.

[6]We recognize that under this interpretation, read in conjunction with *Wala*'s interpretation of crimes involving moral turpitude, an offense involving the intent to commit a non-permanent taking might constitute a theft offense (and, thus, an aggravated felony), but not a crime involving moral turpitude. Indeed, the BIA acknowledged this possibility when it provided this interpretation of "theft offense." *See In re V-Z-S-*, 22 I. & N. Dec. at 1350 n.12 ("An offense involving the taking of property need not be a crime involving moral turpitude in order to be considered a 'theft' offense."). But we need not address whether Congress intended such a result to resolve this case.

Because the text of the larceny statute, the Connecticut cases interpreting it, and our precedent all indicate that a conviction for defrauding a public community requires proof of an intent to wrongfully deprive another of property by making a knowingly false claim for benefits, we hold that first degree larceny in the form of defrauding a public community, in violation of Connecticut General Statutes §§ 53a-122(a)(4) and 53a-119(6), is a crime involving moral turpitude within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I). Accordingly, the petition for review is hereby **DENIED**.