STATE OF CONNECTICUT *v.* FRANK MCGEE
(AC 30329)

DiPentima, C. J., and Bear and Schaller, Js.

---

Argued June 1—officially released October 5, 2010

*Mary Beattie Schairer*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia Serafini*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Frank McGee, appeals from the judgment of conviction, following a jury trial, of two counts of robbery in the second degree in violation of General Statutes § 53a-135 (a) (1) and (2), respectively, conspiracy to commit robbery in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-135 (a) (2), sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (3).[1] He claims on appeal that the trial court improperly (1) rendered judgment of conviction on two counts of robbery in the second degree that is legally inconsistent with his acquittal on the underlying charge of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and should be vacated, (2) failed to instruct the jury on specific intent for the charges of robbery and conspiracy, and (3) rendered judgment against him on the charge of sexual assault, although there was insufficient evidence to prove all of the required elements of that crime. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1 a.m. on March 23, 2007, the

---

[1] The jury returned a verdict of not guilty with respect to the charges of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A).

victims, D and T,[2] were on Pine Street in Waterbury, where they purchased a small amount of cocaine from an unidentified individual. Soon thereafter, a silver Lexus, driven by the defendant, pulled up to the victims. When the victims started to drive away in D's car, the defendant continued to follow them closely until D pulled over and the victims got out of the car. The defendant began asking D and T if they wanted to "get shot." The defendant reached into his car, took out a case and told D and T that he had something for them. D and T both testified that they assumed that there was a gun in the black case. The defendant started going through D's pockets and found $6, which he took from him. The defendant then searched T for cocaine by placing his hands on different parts of her body. He lifted up her shirt and began touching T's breasts roughly under her bra, which later caused bruising to that area. D went to his home, two houses away, and called 911. Police officers arrived and found a car matching the description given by D on Congress Avenue. D and T went to Congress Avenue and positively identified the defendant and the other occupants of his car, who were arrested. Additional facts will be set forth as necessary.

I

The defendant first claims that the conviction of two counts of robbery in the second degree is legally inconsistent with the acquittal on the underlying larceny charge, and he asks that the conviction of the two robbery charges be vacated. The defendant, however, acknowledged at oral argument before this court that *State* v. *Arroyo*, 292 Conn. 558, 585–86, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

L. Ed. 2d 1086 (2010), decided after the filing of the defendant's brief, controls most of this claim. He argues, however, that *Arroyo* does not control the portion of his claim that alleges that under the doctrine of collateral estoppel, the inconsistent verdicts as to the robbery charges must be vacated. We disagree.

In *Arroyo*, our Supreme Court determined that a claim of legally inconsistent verdicts is not reviewable on appeal. Id. The court was guided by its own precedent and the United States Supreme Court case of *United States* v. *Powell*, 469 U.S. 57, 69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). The court in *Arroyo* stated that "[t]he court [in *Powell*] reasoned that inconsistent verdicts . . . should not necessarily be interpreted as a windfall to the [g]overnment at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the [g]overnment has no recourse if it wishes to correct the jury's error; the [g]overnment is precluded from appealing or otherwise upsetting such an acquittal by the [c]onstitution's [d]ouble [j]eopardy [c]lause. . . . The fact that the inconsistency may be the result of lenity, coupled with the [g]overnment's inability to invoke review, suggests that inconsistent verdicts should not be reviewable. . . .

"The court in *Powell* also noted that an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake. . . . Finally, the court recognized that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." (Citations omitted; internal quotation marks omitted.) *State* v.

*Arroyo*, supra, 292 Conn. 585. After a thorough discussion of the state and federal precedent, the court in *Arroyo* determined that "[b]ecause [the] reasoning [in *Powell*] is consistent with our decisions in [*State* v. *Whiteside*, 148 Conn. 208, 169 A.2d 260, cert. denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33 (1961), and *State* v. *Rosado*, 178 Conn. 704, 425 A.2d 108 (1979)], we find it persuasive. . . . Accordingly, we conclude that claims of legal inconsistency between a conviction and an acquittal are not reviewable." (Citations omitted.) *State* v. *Arroyo*, supra, 585–86. The defendant's similar claim in the present case is likewise not reviewable.

The defendant alternatively argues that the doctrine of collateral estoppel requires vacating the verdict as to the two counts of robbery. He claims that the reasoning behind collateral estoppel, "in conjunction with basic concepts of 'realism and rationality,' " applies to a case in which the jury finds the defendant not guilty of an underlying offense. With no analysis, he asserts that this court's statement in *State* v. *Ortiz*, 29 Conn. App. 825, 618 A.2d 547 (1993), that collateral estoppel principles do not apply as against different charges brought in the same trial; id., 836 n.6; is distinguishable. We are not persuaded. This claim, however interpreted, cannot stand in the face of *Arroyo*. Accordingly, the defendant's claim that collateral estoppel requires that his conviction of two counts of robbery in the second degree be vacated is likewise controlled by *Arroyo* and is not reviewable.

## II

The defendant next claims that the court improperly failed to instruct the jury on specific intent for the charges of robbery and conspiracy. Specifically, the defendant asserts that the court set out the definition of general intent during its instructions related to the larceny charge and then only referred back to that

charge when instructing the jury on the robbery and conspiracy charges. The defendant claims that the jury was misled and that he was deprived of a fair trial. We do not agree.

We first set forth our well settled standard of review. "The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions *should not be judged in artificial isolation*, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . *and not critically dissected in a microscopic search for possible error.* . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Emphasis in original; internal quotation marks omitted.) *State* v. *Castillo*, 121 Conn. App. 699, 707, 998 A.2d 177, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010).

Because the defendant filed a request to charge on specific intent, this issue is preserved for appellate review. See Practice Book § 16-20. The following undisputed facts and procedural history are important to the resolution of this claim. On February 28, 2008, before the start of evidence, the court engaged in a discussion with both counsel, on the record, about the various crimes being charged and the elements of those crimes. The court said that to prove the charge of larceny, the state would need to prove that the defendant had the

"intent to deprive another of property and to appropriate the same to himself," with which the defendant agreed. The court went on to discuss the charges of robbery and conspiracy, and the defendant offered no comments at that time requesting a specific intent charge on those counts. Following the close of evidence, the defendant filed a request to charge with the court. On March 6, 2008, the court held a charge conference in chambers with both attorneys present. Following that conference, the court provided both counsel with a copy of the proposed charge. On March 10, 2008, the court discussed with both counsel the proposed jury instructions. On that same date, the court instructed the jury on the law of the case.

The court began with an instruction on the charge of larceny in the second degree, during which the court gave an instruction on general intent.[3] The court next instructed the jury on the substantive elements of the crimes of robbery in the second degree and conspiracy.

---

[3] The court specifically stated: "Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to conduct when his conscious objective is to engage in such conduct. What a person's intention has been is very largely a matter of inference. No witness can be expected to come here and testify that he looked into another person's mind and saw therein contained a certain intention. A jury can determine what a person's intention was at any given time by determining what that person's conduct was and what the circumstances were surrounding that conduct, and any statements made by that person at the time, and from those things infer what his intention was. And intent may be inferred from circumstantial evidence, provided such inference is reasonable and is warranted by the facts you find proved. To draw such an inference is not only the privilege but also the proper function of a jury, provided, of course, that the inference drawn complies with the standards for [inferences] as explained in connection with my instruction on circumstantial evidence.

"If someone took property honestly, although mistakenly believing that he had a right to do so, you cannot find that he had the required intent of this element of larceny. Also, if someone took property that he honestly believed was abandoned, for example, from a dumpster, the necessary intent is missing."

The court instructed the jury on the intent required for each crime. The court did refer back to its previous intent instruction, stating, within its instruction on robbery in the second degree, that "you [the jury] are to consider the definition of larceny and intent you were provided with earlier in these instructions."

The defendant claims that by defining general intent during its instruction on larceny and then referring back to that definition in its instructions on robbery and conspiracy, the court improperly misled the jury. He claims that the jury could have concluded that he only had to intend to engage in the conduct and not to intend the result. The court defined general intent and then referred to that instruction in connection with additional instructions on each charge that made clear the state of mind required to find the defendant guilty of those crimes. During the instructions on the charge of larceny, the court stated that the state must prove that "[a]t the time the defendant obtained such property, he *intended to deprive the owner of his property or to appropriate such property to himself.*"[4] (Emphasis added.) In its instruction to the jury on the counts of robbery, the court referred back to its instructions on larceny, stating that "[r]obbery is simply a larceny, plus with force or threat of force." In the conclusion of its instruction for the crime of robbery in the second degree, the court stated that "in order for you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt that the defendant, one, in the course of committing a larceny, two, used or threatened the *immediate* use of physical force upon another person *for the purpose of* preventing or overcoming resistance to the taking of the property, or to

---

[4] The court later reiterated this charge, stating that "at the time the defendant wrongfully took the property from an owner, he intended to deprive the owner of it. *Intent to deprive must be found to convict a defendant of larceny.*" (Emphasis added.)

the retention thereof immediately after the taking, and, three, he was aided by another person actually present . . . ." (Emphasis added.) The court instructed the jury as to the crime of conspiracy and stated that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct and that any one of them commits an overt act in pursuance of such conspiracy." During the instruction to the jury on the charge of conspiracy, the court also stated that "[a] person is guilty of conspiracy when, *with intent that conduct constituting a crime be performed,* he agrees with one or more persons to engage in or cause the performance of such conduct and that any one of them commits an overt act in pursuance of such conspiracy." (Emphasis added.) Finally, the court stated that to be found guilty on the charge of conspiracy, the state must prove that the defendant had *"the specific intent* to violate the law . . . ." (Emphasis added.)

"Although a trial court may elect to do so, it is not necessary for it to repeatedly instruct the jury on the same element . . . for different crimes charged. As long as the jury has been fully instructed once, it is not reasonably possible that a jury is misled because it was not repeatedly instructed on that same element." *State* v. *Hampton,* 293 Conn. 435, 453, 978 A.2d 1089 (2009); see also *State* v. *Millan,* 290 Conn. 816, 824–25 n.7, 966 A.2d 699 (2009) (trial court's incorporation by reference of earlier instruction regarding element of crime, as well as highlighting of similarity of elements between counts, reasonably would have led jury to conclude element applied to both counts).

Upon a review of the jury instruction as a whole, it is clear that the court gave a thorough instruction on the specific intent that was required to constitute the crimes of larceny, robbery and conspiracy. The court

thoroughly explained each charged crime, and repeatedly stated and explained the specific intent required as elements of each of the contested charges. The court also provided each juror with a written copy of the instructions, which enabled each juror to quickly and easily refer back to the court's instructions regarding each element and apply the instructions to each crime charged. The state concedes that in charging on larceny the court also should have provided the jury with the statutory definition of specific intent because the charge of larceny has a specific intent component, but it contends that when the charge is viewed as a whole, this omission could not reasonably have misled the jury. Because the court's instructions to the jury included language that defined the specific intent necessary to find the defendant guilty of each crime, we agree with the state. In view of the specific intent instructions, the mistake that the trial court made in referring back to the definition of general intent does not result in reversible error.

## III

Last, the defendant claims that the court improperly rendered judgment against him on the charge of sexual assault in the fourth degree, although there was insufficient evidence to prove all of the required elements of that crime. Specifically, the defendant asserts that there was no evidence to show that his act of "frisking" T for cocaine was performed "for the purpose of sexual gratification . . . or for the purpose of degrading or humiliating" the victim, as required by General Statutes § 53a-65 (3). We do not agree.

Following the close of the state's evidence, the defendant moved for judgment of acquittal on counts one through six. He argued that the state did not present evidence that he had acted with a sexual purpose. The court denied the defendant's motion.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Arthurs*, 121 Conn. App. 520, 523–24, 997 A.2d 568 (2010).

Section 53a-73a (a) provides in relevant part that "[a] person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ." "'Sexual contact'" is defined as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ." General Statutes § 53a-65 (3). The statutory definition of "'[i]ntimate parts'" includes breasts. General Statutes § 53a-65 (8). In order to obtain a conviction for sexual assault in the fourth degree, the state must have proven all of these elements beyond a reasonable doubt. The defendant claims that there was insufficient evidence to prove that he acted with a sexual

purpose or with the purpose of degrading and humiliating T. We disagree.

The state presented testimony from the victim of the sexual assault, T, as well as D and Mark Refalo, two witnesses to the crime. They each testified that the defendant touched T's breasts. There was testimony that the defendant roughly "twisted," grabbed and searched T. "It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as . . . the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *Pickel*, 121 Conn. App. 443, 447–48, 995 A.2d 125, cert. denied, 297 Conn. 924, 998 A.2d 169 (2010). We conclude that the evidence presented was sufficient to conclude, beyond a reasonable doubt, that the defendant touched T's intimate parts for the purpose of degrading or humiliating her.

The judgment is affirmed.

In this opinion the other judges concurred.