******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARALAMBOS EFSTATHIADIS *v.*
ERIC H. HOLDER, JR.
(SC 19348)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued April 28—officially released July 14, 2015*

*Robert C. Ross*, for the appellant (plaintiff).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom were *Robert N. Markle*, senior litigation counsel, and on the brief, *Eric H. Holder, Jr.*, former attorney general of the United States, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The dispositive issue in this case, which comes to us upon our acceptance of certified questions from the United States Court of Appeals for the Second Circuit pursuant to General Statutes § 51-199b (d), is whether a violation of General Statutes § 53a-73a (a) (2)[1] is a strict liability offense with respect to the lack of consent element. We answer that question in the negative and, further, conclude that criminal negligence is the mens rea applicable to the element of consent in § 53a-73a (a) (2).

The defendant in the present case, Eric H. Holder, Jr., is the former Attorney General of the United States.[2] The plaintiff, Charalambos Efstathiadis, is a citizen of Greece. The plaintiff entered the United States in 1967 and became a lawful permanent resident. *Efstathiadis* v. *Holder*, 752 F.3d 591, 593 (2d Cir. 2014). In 2005, the plaintiff pleaded guilty to four counts of sexual assault in the fourth degree in violation of § 53a-73a (a) (2). Id. In 2009, the United States Department of Homeland Security commenced removal proceedings against the plaintiff, on the ground that he was deportable under title 8 of the United States Code, § 1227 (a) (2) (A) (ii), which provides in relevant part: "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . is deportable." See *Efstathiadis* v. *Holder*, supra, 593.

Thereafter, the immigration judge determined that § 53a-73a (a) (2) is not a crime involving moral turpitude because " 'the Connecticut statute does not appear to require that the actor know that his actions were not consented to by the victim.' " Id. The Board of Immigration Appeals (board) subsequently "reversed . . . on two [alternative] grounds. First, the [board] found that . . . § 53a-73a (a) (2) was a [crime of moral turpitude] because 'the requirement of acting for the purpose of sexual gratification of the actor or an intention to degrade or humiliate the victim [set forth in § 53a-65 (3)] presents a realistic probability that the perpetrator had an evil intent.' . . . Second, the . . . [board went] beyond the modified categorical approach and consider[ed] the underlying facts of [the plaintiff's] conviction." (Citations omitted; emphasis omitted.) Id., 594.

Thereafter, the plaintiff filed a petition for review of the board's decision with the United States Court of Appeals for the Second Circuit. Id., 593. The Second Circuit concluded that "[w]hether a prior conviction constitutes a [crime of moral turpitude] turns on whether the crime is 'inherently base, vile, or depraved.' *Mendez* v. *Mukasey*, 547 F.3d 345, 347 (2d Cir. 2008). Because '[i]t is in the intent that moral turpitude inheres,' the focus of the analysis is generally 'on the mental state reflected' in the statute. [*Gill* v. *Immigra-*

*tion & Naturalization Services*, 420 F.3d 82, 89 (2d Cir. 2005)]; see [*Mendez* v. *Mukasey*, supra, 347] ('Whether a crime is one involving moral turpitude depends on the offender's evil intent or corruption of the mind.' . . .)." *Efstathiadis* v. *Holder*, supra, 752 F.3d 595.

The Second Circuit further reasoned that, although § 53a-73a (a) (2) unambiguously provides for a mens rea component with respect to the sexual contact element, it is unclear what level of mens rea, if any, applies to the lack of consent element. Id., 595–96. Because the Second Circuit concluded that resolving the issue of what mens rea is required for the lack of consent element of § 53a-73a (a) (2) was necessary to determine whether the plaintiff had been convicted of a crime of moral turpitude, pursuant to § 51-199b (d), it certified the following questions to this court: (1) "Is . . . § 53a-73a (a) (2) a strict liability offense with respect to the lack of consent element?"; and (2) "If . . . § 53a-73a (a) (2) is not a strict liability offense with respect to the lack of consent element, what level of mens rea vis-á-vis that element is required to support a conviction?" Id., 599.[3]

Resolution of these questions involves an issue of statutory interpretation over which we exercise plenary review. See, e.g., *State* v. *Crespo*, 317 Conn. 1,     A.3d     (2015). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 9. Whether the lack of consent element of § 53a-73a (a) (2) requires a mens rea, and what level of mens rea is a matter of statutory interpretation. *State* v. *Hill*, 256 Conn. 412, 419, 773 A.2d 931 (2001).

I

We first address whether § 53a-73a (a) (2) is a strict liability offense with respect to the lack of consent element. The plaintiff asserts that § 53a-73a (a) (2) is a strict liability offense because the plain language of

the statute does not contain a mens rea requirement regarding the lack of consent element. In response, the defendant claims that § 53a-73a (a) (2) is not a strict liability offense and that this court's analysis in *State* v. *Smith*, 210 Conn. 132, 554 A.2d 713 (1989), is applicable to the present case. We agree with the defendant, and conclude that § 53a-73a (a) (2) is not a strict liability offense.

We begin with the language of the statute. Section 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ."

As the Second Circuit recognized, "§ 53a-73a (a) (2), in turn, is informed by the statutory definition of sexual contact . . . ." *Efstathiadis* v. *Holder*, supra, 752 F.3d 595. The term " '[s]exual contact' " is defined in General Statutes § 53a-65 (3) as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."[4]

The Second Circuit further explained, "§ 53a-73a (a) (2) outlines three elements-sexual contact, for a prohibited purpose, and without consent. Connecticut courts have not added a complicating judicial gloss but have applied the statute as written. See, e.g., *State* v. *McGee*, [124 Conn. App. 261, 272, 4 A.3d 837 (2010)] (reciting the statutory definitions given above); *State* v. *Montoya*, [110 Conn. App. 97, 103, 954 A.2d 193 (2008)] (same). The Connecticut Criminal Jury Instructions also identify three elements—sexual contact, 'specific intent' either to obtain sexual gratification or to degrade or humiliate the complainant, and 'the complainant did not consent to the sexual contact.' " (Footnote omitted.) *Efstathiadis* v. *Holder*, supra, 752 F.3d 595–96; see also Connecticut Criminal Jury Instructions (4th Ed. 2008) § 7.1-12, available at http://www.jud.ct.gov/ji/Criminal/part7/7.1-12.htm (last visited June 23, 2015).

The legislature has not, however, defined the meaning of the term "without such other person's consent . . . ." General Statutes § 53a-73a (a) (2). "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citation omitted; internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 128, 51 A.3d 1048 (2012).

The term "consent" is defined with substantial similarity in numerous sources. Webster's Third New International Dictionary (2002) defines consent as a "capable, deliberate and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action . . . ." The American Heritage Dictionary of the English Language (3d Ed. 1992) similarly defines "consent" as the voluntary "[a]cceptance or approval of what is planned or done by another . . . ." See also D. Borden & L. Orland, 5A Connecticut Practice Series: Criminal Jury Instructions (4th Ed. 2007) § 10.5, p. 243 ("[c]onsent may be expressed, or it may be implied or inferred from the circumstances"). Although these definitions are helpful in understanding the term consent, nothing in these definitions explains what mens rea, if any, applies to the "without such other person's consent" element of § 53a-73a (a) (2).

"While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes, even where the statutory definition did not in terms include it . . . there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement. . . . [T]he common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions. . . . Whether or not a statutory crime requires mens rea or scienter as an element of the offense is largely a question of legislative intent to be determined from the general scope of the act and from the nature of the evils to be avoided." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 217–18, 942 A.2d 1000 (2008).

This court has repeatedly recognized that "[w]hen the commission of an offense defined in [the Penal Code], or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms intentionally, knowingly, recklessly or criminal negligence, or by use of terms such as with intent to defraud and knowing it to be false, describing a specific kind of intent or knowledge. . . . Generally, the absence of any such requirement demonstrates that the legislature did not intend to make it an element of the crime." (Citation omitted; internal quotation marks omitted.) Id., 218.

This court has also repeatedly recognized, however, "that we are not precluded from finding a requirement for mental culpability when a statute contains [no explicit mens rea]. See Commission to Revise the Criminal Statutes, Penal Code Comments, [Conn. Gen. Stat. Ann. (West 2001) § 53a-5, comment] (omission of lan-

guage of mental culpability in penal statute is not conclusive). Rather, as we already have indicated, whether a particular mental state is required for a specific element of an offense in the absence of an explicit provision depends on the general scope of the [statute] and the nature of the evils to be avoided." (Internal quotation marks omitted.) *State* v. *Higgins*, 265 Conn. 35, 46–47, 826 A.2d 1126 (2003).

In the present case, the language of § 53a-73a (a) (2) does not expressly contain any mens rea, therefore, we must look to "the general scope of the [statute] and the nature of the evils to be avoided." (Internal quotation marks omitted.) Id., 46–47. In doing so, we do not write on a clean slate, but are guided by our interpretation of a related statute, General Statutes § 53a-70, sexual assault in the first degree.

In *State* v. *Smith*, supra, 210 Conn. 132, this court addressed whether the crime of sexual assault in the first degree contains a mens rea. In considering this issue, this court explained that "[o]ur first degree sexual assault statute, § 53a-70, applies to a person who 'compels another person to engage in sexual intercourse by the use of force . . . or by the threat of use of force which . . . reasonably causes such person to fear physical injury . . . .'" Id., 139–40.

This court recognized that traditionally § 53a-70 had been interpreted as a general intent crime. Id., 136. In reaching that conclusion, this court "adhere[d] to the view expressed in [its] earlier decisions that no specific intent, but only a general intent to perform the physical acts constituting the crime, is necessary for the crime of first degree sexual assault." Id., 141.

Nevertheless, this court then recognized that "[a] finding that a complainant had consented would implicitly negate a claim that the actor had compelled the complainant by force or threat to engage in sexual intercourse. Consent is not made an affirmative defense under our sex offense statutes, so, as in the case of the defense of alibi, the burden is upon the state to prove lack of consent beyond a reasonable doubt whenever the issue is raised." Id., 140.

This court further explained that "[w]hile the word 'consent' is commonly regarded as referring to the state of mind of the complainant in a sexual assault case, it cannot be viewed as a wholly subjective concept. Although the actual state of mind of the actor in a criminal case may in many instances be the issue upon which culpability depends, a defendant is not chargeable with knowledge of the internal workings of the minds of others except to the extent that he should reasonably have gained such knowledge from his observations of their conduct." Id. This court further explained that "[t]he law of contract has come to recognize that a true 'meeting of the minds' is no longer

essential to the formation of a contract and that rights and obligations may arise from acts of the parties, usually their words, upon which a reasonable person would rely. . . . Similarly, whether a complainant has consented to intercourse depends upon her manifestations of such consent as reasonably construed." (Citation omitted.) Id.

Our review of *Smith* demonstrates that, although this court reaffirmed its previous holdings that sexual assault in the first degree is a general intent crime, it rejected the idea that it is a strict liability crime. "General intent" is the "intention to make the bodily movement which constitutes the act which the crime requires . . . ." (Internal quotation marks omitted.) *State* v. *James*, 211 Conn. 555, 586, 560 A.2d 426 (1989); see also 1 W. LaFave, Substantive Criminal Law (2d Ed. 2003) § 5.2 (f), p. 355. In *Smith*, this court explained that, although no specific intent to have sexual intercourse without consent is required, "[i]f the conduct of the complainant under all the circumstances should reasonably be viewed as indicating consent to the act of intercourse, a defendant should not be found guilty because of some undisclosed mental reservation on the part of the complainant. Reasonable conduct ought not to be deemed criminal." *State* v. *Smith*, supra, 210 Conn. 140–41. Thereby, the court implicitly rejected the notion that § 53a-70 is a strict liability offense.

In the twenty-five years since *Smith*, the legislature has not acted to amend § 53a-70 in response to this court's interpretation. "Although we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 78, 68 A.3d 1150 (2013). By choosing not to legislatively overrule *Smith*, the legislature has acquiesced to this court's interpretation that sexual assault in the first degree is not a strict liability offense. Indeed, one of the indicators of legislative acquiescence to our interpretation of a statute is the passage of "an appropriate interval [of time] to permit legislative reconsideration . . . without corrective legislative action . . . ." *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 494–95, 923 A.2d 657 (2007).

In interpreting § 53a-73a (a) (2), we are mindful of the well established principle that, when "more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *In re Jusstice W.*, 308 Conn. 652, 671, 65 A.3d 487 (2012). Applying this principle to the present case, we

are persuaded by this court's analysis in *State* v. *Smith*, supra, 210 Conn. 139–41, concluding that sexual assault in the first degree is not a strict liability offense, and we see no reason why sexual assault in the fourth degree should be treated any differently. Both sexual assault in the first degree and sexual assault in the fourth degree were designed to protect society from sexual contact without voluntary agreement between "consenting, competent adults . . . ." Commission to Revise the Criminal Statutes, Commentary on Title 53a, The Penal Code (1969), p. 38.

Moreover, requiring a mens rea for the lack of consent element in § 53a-73a is consistent with the purpose of the drafters of the Penal Code. In the commentary to the Penal Code, the drafters noted that: "These sections are concerned principally with prohibiting [nonconsensual] sexual activity between parties not married to each other, and, even where there may be actual consent, situations in which one party may be under the control of the other because of limitations, or other factors. At the same time they attempt to draw rational distinctions between degrees of blameworthiness based on varying age disparities and degrees and kinds of lack [of] consent, and also attempt to define special affirmative defenses to cover cases in which blameworthiness may be reduced or eliminated." Id., pp. 38–39. As this commentary explains, the commission sought to make distinctions regarding degrees and kinds of lack of consent and to reduce blameworthiness where appropriate. Imposing strict liability for a violation of § 53a-73a (a) (2) frustrates that purpose.

Accordingly, on the basis of the language set forth in § 53a-73a (a) (2), this court's holding in *State* v. *Smith*, supra, 210 Conn. 138, and the stated purpose of the drafters of the Penal Code, we conclude that § 53a-73a (a) (2) is not a strict liability offense.

## II

We next turn to what level of mens rea is required by § 53a-73a (a) (2). The plaintiff asserts that if § 53a-73a (a) (2) is not a strict liability offense, the level of mens rea required for the lack of consent element is criminal negligence. In response, the defendant asserts that § 53a-73a (a) (2) is not a strict liability offense and that criminal negligence is the required mens rea for the lack of consent element. In support of its claim, the defendant asserts that this court concluded that criminal negligence was the appropriate level of mens rea under § 53a-70 in *State* v. *Smith*, supra, 210 Conn. 139–41, and that we should apply that same level of mens rea to § 53a-73a (a) (2) because they are related statutes designed to address the same type of conduct. We agree with the defendant, and conclude that criminal negligence is the required mens rea for the lack of consent element.

As we explained in part I of this opinion, in *State* v. *Smith*, supra, 210 Conn. 143, this court addressed § 53a-70, sexual assault in the first degree. Although this court's opinion in *Smith* is not the model of clarity, it does explain that "[w]hile the word 'consent' is commonly regarded as referring to the state of mind of the complainant in a sexual assault case, it cannot be viewed as a wholly subjective concept. . . . If the conduct of the complainant under all the circumstances should reasonably be viewed as indicating consent to the act of intercourse, a defendant should not be found guilty because of some undisclosed mental reservation on the part of the complainant. Reasonable conduct ought not to be deemed criminal." (Citation omitted.) Id., 140–41. Indeed, the court further reasoned as follows: "It is likely that juries in considering the defense of consent in sexual assault cases, though visualizing the issue in terms of actual consent by the complainant, have reached their verdicts on the basis of inferences that a reasonable person would draw from the conduct of the complainant and the defendant under the surrounding circumstances. It is doubtful that jurors would ever convict a defendant who had in their view acted in reasonable reliance upon words or conduct of the complainant indicating consent, even though there had been some concealed reluctance on her part. If a defendant were concerned about such a possibility, however, he would be entitled, once the issue is raised, to request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented." Id., 141.

As we explained previously herein, in *State* v. *Smith*, supra, 210 Conn. 141, this court affirmed its previous holdings that § 53a-70 was a general intent crime. This court explained that "we adhere to the view expressed in our earlier decisions that no specific intent, but only a general intent to perform the physical acts constituting the crime, is necessary for the crime of first degree sexual assault." Id. Thereby, this court implicitly rejected the notion that the state must prove either "an actual awareness on the part of the defendant that the complainant had not consented or a reckless disregard of her nonconsenting status." Id. In doing so, this court also rejected intentionally, knowingly, and recklessly as the required mens rea. See General Statutes § 53a-3 (11) through (13).

Instead, this court explained that "a defendant is entitled to a jury instruction that a defendant may not be convicted of this crime if the words or conduct of the complainant under all the circumstances would justify a reasonable belief that she had consented. We arrive at that result, however, not on the basis of our Penal Code provision relating to a mistake of fact, [General Statutes] § 53a-6 (a), which is applicable only to specific

intent crimes, but on the ground that whether a complainant should be found to have consented depends upon how her behavior would have been viewed by a reasonable person under the surrounding circumstances." *State* v. *Smith*, supra, 210 Conn. 141–42.

Although this court did not clearly identify that it was applying the "criminal negligence" standard to § 53a-70, a review of that standard demonstrates that it is consistent with the holding of *State* v. *Smith*, supra, 210 Conn. 138. Section 53a-3 (14) defines criminal negligence as follows: "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

In *State* v. *Smith*, supra, 210 Conn. 138, this court repeatedly referred to reasonableness in addressing how a criminal defendant's actions should be considered. Indeed, this court explained that "the crux of the inquiry on the issue of consent was not the subjective state of mind of the complainant but rather her manifestations of lack of consent by words or conduct as reasonably construed." Id., 143. Accordingly, we conclude that this court applied the criminal negligence standard to § 53a-70 in *Smith*.

As we explained in part I of this opinion, §§ 53a-70 and 53a-73a (a) (2) are related statutes designed to protect society from similar harms, namely unwanted sexual contact. We must, therefore, construe these statutes so as to create a harmonious body of law. See *In re Jusstice W.*, supra, 308 Conn. 671 ("[w]hen more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them" [internal quotation marks omitted]). Therefore, we conclude that it is appropriate to apply the same mens rea, criminal negligence, to both §§ 53a-70 and 53a-73a (a) (2).

The first certified question asks: "Is . . . § 53a-73a (a) (2) a strict liability offense with respect to the lack of consent element?" *Efstathiadis* v. *Holder*, supra, 752 F.3d 599. For the reasons stated in part I of this opinion, we answer this question in the negative. The second certified question asks: "If . . . § 53a-73a (a) (2) is not a strict liability offense with respect to the lack of consent element, what level of mens rea vis-á-vis that element is required to support a conviction?" Id. For the reasons stated in part II of this opinion, we conclude that the mens rea applicable to the element of consent in § 53a-73a (a) (2) is criminal negligence.

In this opinion the other justices concurred.

[1] We note that § 53a-73a has been the subject of recent amendments by the legislature. See, e.g., Public Acts 2013, No. 13-47, § 2. Those amendments do not, however, alter our analysis of the questions presented in the present case. In the interest of simplicity, we refer to the current revision of the statute.

[2] We note that Loretta E. Lynch recently succeeded Holder as the Attorney General of the United States.

[3] Thereafter, the state filed a motion requesting permission to file a brief in excess of ten pages and participate in oral argument. In its motion, the state argued that it has a substantial interest in the interpretation of § 53a-73a. In granting the state's motion, this court ordered the state and the defendant to file a joint brief, not to exceed thirty-five pages, and that oral argument, not exceeding thirty minutes, would be permitted for either the state or the defendant.

[4] We note that § 53a-65 has also recently been amended by the legislature. See Public Acts 2013, No. 13-47, § 3. Those amendments, however, have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.